## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STUDENT BORROWER PROTECTION
CENTER,

      *Plaintiff,*

    v.

UNITED STATES DEPARTMENT OF
EDUCATION,

      *Defendant.*

Civil Action No. 23-1780 (SLS)

Judge Sparkle L. Sooknanan

## <u>MEMORANDUM OPINION</u>

The Student Borrower Protection Center (SBPC) brought this lawsuit under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to compel the Department of Education to release certain records regarding its policy of writing off the defaulted federal student loans of incarcerated borrowers. The Department of Education has since produced the requested records and the Parties have worked together to resolve their disagreements about the FOIA request. What remains is a motion from SBPC requesting $56,962.50 in attorneys' fees and costs. A FOIA plaintiff is only eligible for attorneys' fees and costs upon a showing that it "substantially prevailed" in the underlying litigation. *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981). Because SBPC has not made such a showing, the Court denies its motion.

## BACKGROUND

### A.    Statutory Background

"Congress enacted FOIA in 1966 to grant a right of public access to governmental information 'long shielded unnecessarily from public view[.]'" *Martin v. Dep't of Just.*, 488 F.3d 446, 453 (D.C. Cir. 2007) (citing *EPA v. Mink*, 410 U.S. 73, 80 (1973), *superseded by statute*,

Freedom of Information Act, Pub. L. No. 93–502, § 2(a), 88 Stat. 1563 (1973)). FOIA requires

that "records and material in the possession of federal agencies be made available on demand to

any member of the general public." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 221

(1978); *see also* 5 U.S.C. § 552. It allows the public to "pierce the veil of administrative secrecy

and to open agency action to the light of public scrutiny." *ACLU v. U.S. Dep't of Just.*, 655 F.3d

1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal

quotation marks omitted)). Even though the Act was "broadly conceived," *EPA*, 410 U.S. at 80, it

includes nine "carefully structured . . . exemptions," *NLRB*, 437 U.S. at 220–221. These

exemptions demonstrate that the public's right to information is "'not absolute' and that disclosure

of certain information 'may harm legitimate governmental or private interests.'" *Martin*, 488 F.3d

at 453 (quoting *Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)). FOIA permits courts to

award "reasonable attorney fees and other litigation costs reasonably incurred" in FOIA litigation

"in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).

### B.    Factual and Procedural Background

SBPC is a nonprofit that "engages in advocacy, research, and litigation . . . to rein in

industry abuses, protect borrowers' rights, and advance economic opportunity for the next

generation of students." Compl. ¶ 7, ECF No. 1. Its lawsuit names the Department of Education as

the sole Defendant, a "federal agency . . . responsible for administering federal student loan and

grant programs in the United States." *Id.* ¶ 8.

SBPC's goal is to "alleviat[e] the student loan debt burden for *all* Americans." *See* Pl.'s

Mot. for Att'y Fees & Costs (Pl.'s Mot) at 12, ECF No. 18 (emphasis in original) (citing *See Who*

*We Are*, Student Borrower Protection Ctr., https://perma.cc/GT78-Y3BH). True to its mission,

SBPC has published multiple works on the "topic of student loan borrowers who are incarcerated"

and "maintains a website" that provides these individuals "information about their loan options." Pl.'s Mot. at 11–12; *see also Student Loan Debt Relief for Incarcerated Borrowers*, Student Borrower Protection Ctr., https://perma.cc/2VZY-2Y4M.

According to SBPC, the Department of Education "has a long-standing policy of writing off as uncollectable the student loans of incarcerated borrowers who are incarcerated for periods of ten years or more." Pl.'s Mot. at 1. SBPC claims that this policy is "not widely known," resulting in "few" applications from incarcerated borrowers, unclear qualifications, and inconsistent application of the program. *Id.* To address this problem, SBPC submitted a FOIA request to the Department of Education on November 29, 2021, "seeking documents that would provide insight into this program and requesting a fee waiver." Pl.'s Mot. at 1; *see also* Ex. 1, ECF No. 18-2. SBPC asked for: (1) "documents, communications, reports, audits, records, and data related to the number of borrowers who have secured discharge because of incarceration lasting ten years or more"; (2) "the number of applications and/or requests for this discharge that borrowers have ever submitted"; and (3) "the number of currently incarcerated or likely incarcerated people who owe on federal student loan debt," among other things. Pl.'s Mot. at 2.

On December 1, 2021, a government information specialist at the Department of Education acknowledged receipt of the request and "asked for clarification regarding the date range[.]" Pl.'s Mot. at 2. SBPC responded on the same day that the date range should be the "last decade." *Id.*; *see also* Pl.'s Mot., Declaration of Benjamin Kaufman (Kaufman Decl.) ¶ 4; ECF No. 18-1. On December 14, 2021, SBPC received an email from the agency stating that the FOIA request was "in process." Kaufman Decl. ¶ 6. About two weeks later, SBPC received another email stating that the FOIA request was "[o]n [h]old." *Id.* ¶ 7; *see also* Ex. 6, ECF No. 18-7. When SBPC asked about the change in status, the Department of Education advised that the agency was "unable to

process [the] request" because it "does not reasonably describe the records sought[.]" *See* Ex. 10, ECF No. 18-11. After SBPC addressed the clarifications, the agency returned the status to "in process." Kaufman Declaration ¶ 10; *see also* Ex. 11, ECF No. 18-12; Ex. 12, ECF No. 18-13.[1] On January 14, 2022, the Department of Education emailed a "20-Day Status Notification" to SBPC, which "indicated that [the agency] was 'unable to provide an estimated completion date' for the FOIA request." Kaufman Decl. ¶ 11; *see also* Ex. 13, ECF No. 18-14.

On June 9, 2022, SBPC asked the agency for an update, noting that it had been "6 months" since the last notification. Kaufman Decl. ¶ 12; *see also* Ex. 14, ECF No. 18-15. SBPC asserts that the agency provided "no response," Pl.'s Mot. at 1, which the Department of Education does not dispute.

A year later, SBPC filed this lawsuit alleging that the agency had "failed to conduct an adequate search for the records requested" and "withheld such records without a proper explanation or denial." Compl. ¶ 23. The Department of Education answered on July 27, 2023, arguing, inter alia, that it had "exercised due diligence in processing [the] Plaintiff's FOIA request" and that "exceptional circumstances" existed "necessitating additional time for Defendant to continue its processing of the request." Answer at 7, ECF No. 8 (citing 5 U.S.C. § 552(a)(6)(C)). In a Joint Status Report, the agency then contended "that the Plaintiff's FOIA request did not 'reasonably describe[]' the records sought under 5 U.S.C. § 552(a)(3)(A)." Jt. Status Rep. (Aug. 11, 2023) at 1, ECF No 9. The Parties asked the Court to "postpone the parties' joint submission

---

[1] The Defendant claims that the "vast majority of [the] Plaintiff's original request was premised on a misunderstanding." Def.'s Opp'n at 2. It claims that SBPC incorrectly asked for "applications" for the incarcerated borrowers write-off program when "[t]here is no entitlement to a 'discharge' for incarceration in excess of 10 years." Def.'s Opp'n at 4. Even if true, this only underscores how little public information was available about the program.

of a briefing schedule so that they could attempt to resolve the request without burdening the Court" as they had narrowed the request. Pl.'s Mot. at 5.

Two months later, on November 9, 2023, the Department of Education released its first series of documents, providing SBPC with "over 60 pages of responsive documents related to the policies and procedures that [the agency] and its contractors used when working with incarcerated borrowers." Pl.'s Mot. at 5; *see also* Ex. 15, ECF No. 18-17. The agency made additional productions on November 17, 2023, *see* Ex. 16, ECF No 18-18; December 12, 2023, *see* Ex. 17, ECF No. 18-19; and December 19, 2023, *see* Ex. 18, ECF No. 18-20. The Department of Education sent its final response to the Plaintiff in December 2023. *See* Def.'s Opp'n at 4. SBPC reviewed the documents from February to March 2024, then conferred with the agency about other documents that "were responsive to SBPC's request" that it "identified through references in the initial productions[.]" Pl.'s Mot. at 6.

In February 2024, SBPC "sent [the agency] a series of follow-up questions and/or identified documents that it contend[ed] [were] missing but within the scope of the [] FOIA request." Jt. Status Rep. at 1 (Feb. 14, 2024), ECF No. 13. The Department of Education responded that SBPC might need to file a new FOIA request to obtain those documents. *Id.* In March, April, May, and June 2024, the agency "made voluntary disclosures" and answered SBPC's questions about the documents "in good faith, but without any corresponding duty under the FOIA." Def.'s Opp'n at 4. The Parties continued to confer, and the agency released a supplemental response to SBPC on June 11, 2024, including over 400 pages of documents. Pl.'s Mot. at 6; *see also* Ex. 21, ECF No. 18-23. According to the agency, "the control responses [the] Plaintiff sought in their follow up requests [were] not responsive to the FOIA request," Def.'s Opp'n, Declaration of Nkechinyere Ezekwe (Ezekwe Declaration) ¶ 50, ECF No. 19-1, and thus "outside the bounds of

[SBPC's] written request," Def.'s Opp'n at 4, ECF No. 19. On July 2, 2024, SBPC "informed [the agency] that it had finished reviewing all of the productions and had no further questions." Pl.'s Mot. at 6.

The next day, SBPC sent the Department of Education an offer to "settle the case in exchange for ten thousand dollars in attorney fees and production of the remaining documents." Pl.'s Mot. at 6; *see also* Pl.'s Mot., Declaration of R.T. Winston Berkman-Breen ¶ 2, ECF No. 18- 27. On August 26, 2024, the agency declined the settlement offer, explaining that it "did not believe [the] Plaintiff was eligible for fees under the FOIA statute." Pl.'s Mot. at 7. After "multiple unsuccessful attempts to resolve [the] matter," the Parties proceeded to briefing. Pl.'s Mot. at 7; *see also* Jt. Status Rep. (Nov. 11, 2024), ECF No. 17. SBPC filed a Motion for Attorney Fees and Costs, Pl.'s Mot., which the Department of Education opposed, Def.'s Opp'n. Ultimately, SBPC seeks $56,962.50 in attorneys' fees and costs, of which 69 percent represents fees-on-fees work, *see* Pl.'s Reply at 21, ECF No. 20. These are fees incurred while "drafting emails about fees or creating the [] motion," Def.'s Opp'n at 4–5, and "drafting and submitting [the] reply brief," Pl.'s Reply at 21. The motion is fully briefed and ripe for resolution. *See* Def's Opp'n; Pl.'s Reply.

## LEGAL STANDARD

Courts may award "reasonable attorney fees and other litigation costs reasonably incurred" in FOIA litigation. 5 U.S.C. § 552(4)(E)(i). A FOIA plaintiff must demonstrate both "eligibility" and "entitlement" to fees and costs. *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011). Eligibility is a "threshold inquiry." *McKinley v. Fed. Hous. Financy Agency*, 174 F. Supp. 3d 220, 222 (D.D.C. 2012). If a court determines that the plaintiff is ineligible for fees and costs, it "need not consider whether the plaintiff is entitled to [them]." *ACLU v. U.S. Dep't of Energy*, 2024 WL 5484078, at *3 (D.D.C. Dec. 23, 2024) (cleaned up). To establish eligibility, a plaintiff must demonstrate that it "substantially prevailed" in the litigation.

§ 552(a)(4)(E). This requires a showing that the plaintiff obtained relief through a "judicial order, or an enforceable written agreement or consent decree," or by obtaining a "voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." § 552(a)(4)(E)(ii)(I)–(II). The second prong of the statute requiring a voluntary or unilateral change in the agency's position is referred to as the "catalyst theory." *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 95 (D.C. Cir. 2020) (citation omitted).

## DISCUSSION

In the absence of Court-ordered disclosure, SBPC relies only on the catalyst theory to establish its eligibility for attorneys' fees and costs. SBPC argues that the Department of Education did not release documents until "well after" the lawsuit was filed. Pl.'s Mot. at 8–9. And it contends that the lawsuit "accelerated" the agency's release of documents. *See id.* at 9. The Department of Education counters that SBPC cannot show a voluntary or unilateral change in the agency's position because it had been processing SBPC's FOIA request for more than a year before this lawsuit. Def.'s Opp'n at 9. And the record bears that out. Based on the Parties' submissions, SBPC has not demonstrated its eligibility for attorneys' fees and costs under the statute.

The "key question" under the catalyst theory is "whether 'the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation[.]'" *Calypso Cargo Ltd. v. U.S. Coast Guard*, 850 F. Supp. 2d 1, 4 (D.D.C. 2011) (alterations in original) (internal citations and quotation marks omitted). Whether a plaintiff has sparked this type of change is "largely a question of causation." *Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 46–47 (D.D.C. 2012) (citation and internal quotations omitted). When "disclosure is triggered by events unrelated to the pending lawsuit, the causal nexus is missing, and the requester cannot be deemed a 'prevailing party[.]'" *Citizens for Resp. & Ethics in*

*Washington v. DOJ*, 83 F. Supp. 3d 297, 303 (D.D.C. 2015) (noting that this "prevent[s] plaintiffs from being the beneficiaries of purely extrinsic factors").

Courts also consider "whether the agency, upon actual and reasonable notice of the request, made a good faith effort to search out material and to pass on whether it should be disclosed." *Church of Scientology of Cal.*, 653 F.2d at 588 (citing *Cox v. United States Dep't of Justice*, 601 F.2d 1, 6 (D.C. Cir. 1979). And they take into account "administrative delays due to backlogs of FOIA requests, the volume of responsive records requiring processing, the necessity of inter-agency searches and responses, or a combination of these factors." *Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 272 F. Supp. 3d 49, 53–54 (D.D.C. 2017). "At bottom, then, the question is whether hard evidence—beyond temporal proximity—supports the inference that the plaintiff's lawsuit caused the document release or other requested relief." *Am. First Legal Foundation*, 2024 WL 5484078, at *2 (citing *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 206 (D.D.C. 2016)). Courts "look at the circumstances surrounding disclosure" when making this determination. *Grand Canyon Tr.*, 311 F. Supp. 3d at 389.

### A.    Temporal Proximity

SBPC principally relies on timing to establish that this lawsuit was the catalyst to the agency producing documents. It points out that "[t]he agency made no communications for one and a half years, and only began to search for and produce documents after this action was filed." Pl.'s Mot. at 1–2; *see also id.* at 8 (noting that the Department of Education's failure to respond "for a year and a half, or even provide SBPC with an estimated production date, as required by FOIA, provides a clear inference that the [agency] 'forgot about, or sought to ignore' SBPC's request") (citations omitted). And it claims that "[b]ut for this litigation, it is highly unlikely that [the agency] would have fulfilled its statutory obligations." Pl.'s Reply at 1. The Court is

unconvinced. There is virtually no support for that claim in the record. And the Department of Education has provided evidence that it was processing SBPC's FOIA request for more than a year before this lawsuit.

Nkechinyere Ezekwe, a FOIA coordinator in the Department of Education's Federal Student Aid Program, submitted an extremely detailed sixteen-page declaration that rebuts SBPC's claims. *See* Ezekwe Declaration. That declaration, which is afforded a "presumption of good faith," *see SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative' claims[.]"), carries the day for three reasons.

*First*, Ms. Ezekwe recounts that the agency immediately assigned the FOIA request, Ezekwe Declaration ¶ 8, and sent its "internal determination letter" to SBPC within two months of receiving the FOIA request, *id.* ¶ 13; *see also* Ex. 13, ECF No. 18-14. This is significant, as it demonstrates the agency's intent to comply with the request. *See, e.g.*, *WP Co. LLC v. U.S. Dep't of State*, 506 F. Supp. 3d 11, 17 (D.D.C. 2020) (holding that the requester was ineligible for fees in part because "[u]pon receiving the FOIA request (and prior to suit's commencement), the Department notified [the requester] that it would be 'processed as quickly as possible'" and that "seems to have occurred"); *see also Harvey v. Lynch*, 178 F. Supp. 3d 5 (D.D.C. 2016) (denying a motion for attorneys' fees where the government "initiated a search for responsive records . . . shortly after [the plaintiff] submitted his request").

*Second*, Ms. Ezekwe's declaration provides a detailed timeline of the steps the Department of Education took from December 2021 to March 2023 to process SBPC's request. *See* Ezekwe Declaration ¶¶ 10–33. Days after receiving the FOIA request, the agency communicated with SBPC about clarifications. *Id.* ¶¶ 10–11 (describing uncertainty about the date range and

subsequent emails to clarify). And in the months that followed, various offices at the agency communicated about the request. *Id.* ¶¶ 12–22 (detailing communications between the Data Research Team and others from January 2022 to April 2022 about the FOIA request). In April 2022, the Federal Student Aid program met with the Student Experience and Aid Delivery group to discuss the scope of the request. *Id.* ¶ 23 (providing details about the meeting, which concluded with the agency continuing to work to locate responsive records). Communications at the agency continued after that meeting about responsive records. *Id.* ¶¶ 24, 25 (mentioning a June 24, 2022, meeting where Federal Student Aid "internally deliberated" over "how to conduct an efficient review"). Ms. Ezekwe's declaration then describes a line-by-line review of three Microsoft Excel spreadsheets with a combined total of 495 rows and over 13,000 pages. *Id.* ¶ 24. In September 2022, the agency worked to address redaction issues with certain records in Microsoft Excel. *Id.* ¶ 26. And in November 2022, there were communications at the agency, including with its General Counsel, about recommended redactions. *Id.* ¶ 28. From December 2022 to March 2023, various personnel at the agency communicated about redactions and review of potentially responsive documents. *Id.* ¶¶ 29–33 (discussing internal reviews of redactions and pending feedback from senior leadership).

Even SBPC describes the agency's declaration as a "dizzying back-and-forth of internal bureaucratic deliberations among multiple departments." Pl.'s Reply at 4. It simply is not true that the agency was ignoring SBPC's FOIA request before this lawsuit. *See Harvey*, 178 F. Supp. 3d at 7–8 (finding that "the [Bureau of Prison's] declaration and the supporting evidence ma[d]e clear [that] the bulk of the work to process [the] FOIA request had already been completed at the time [the Plaintiff] filed suit" meaning that the lawsuit "at most, prompted the [agency] . . . to wrap up work that had already been taken almost to completion"); *see also Calypso Cargo Ltd.*, 850 F.

Supp. 2d at 5 (denying attorneys' fees when the defendant "provided a detailed timeline of events leading up to the release of the requested records" showing that "multiple divisions within the Coast Guard had already begun coordinating and processing the plaintiffs' request before plaintiffs filed their lawsuit"). And this case is a far cry from cases finding that delay justified an award of attorneys' fees. *See, e.g.*, *Church of Scientology of Cal.*, 653 F.2d at 588 (finding "absolutely no indication in the record that [the Defendant] would have actually searched the General Counsel's files or released any of the contents thereof in the absence of this litigation").

*Third*, Ms. Ezekwe's declaration sets out important context about delays at the agency that SBPC fails to acknowledge. Courts in this District consider whether a delay "may be due to factors having nothing to do with the filing of the lawsuit but instead with administrative delays due to backlogs of FOIA requests, the volume of responsive records requiring processing, the necessity of inter-agency searches and responses, or a combination of these factors." *Dorsen v. United States Sec. & Exch. Comm'n*, 15 F. Supp. 3d 112, 118–19 (D.D.C. 2014). Any inference that an agency was ignoring a FOIA request "is eroded, if not fully rebutted, when the agency provides an alternative explanation for the delay." *First Look Media Works, Inc. v. U.S. Agency for Glob. Media*, No. 20-cv-3499, 2024 WL 4262773, at *4 (D.D.C. Sept. 23, 2024). That appears to be true here. While the records requested are no doubt of public interest, the Department of Education received over 2,000 FOIA requests in 2021 alone. *See* Ezekwe Declaration at ¶ 4 (citing Department of Education, Freedom of Information Act Annual Report to the Attorney General of the United States at 6 (2021), https://perma.cc/SVR9-DDLS). And the agency had reason to prioritize FOIA requests submitted by other requestors along the way. *See* Ezekwe Declaration ¶ 18 (explaining that the FOIA Service Center "urgently ordered Federal Student Aid to prioritize FOIA requests submitted by a different requestor and complete its response by April 1, 2022");

*see also id.* ¶ 59 (noting the "very large FOIA demand" that the Department of Education has been experiencing).

The Court is not persuaded by SBPC's arguments to the contrary. SBPC principally relies on *EPIC,* where the plaintiff's suit was the catalyst for the release of documents "because the agency failed to respond to the plaintiff's request or provide insight into a production schedule for over eight months, and not until the plaintiff filed the lawsuit." Pl.'s Mot. at 8–9 (citing *Elec. Priv. Info. Ctr. v. United States Dep't of Homeland Sec.* (*EPIC*), 218 F. Supp. 3d 27, 42 (D.D.C. 2016)). But there, the agency provided "very little insight into what, if any, concrete steps the agency was taking to address EPIC's FOIA request." *EPIC*, 218 F. Supp. at 42. The government's declaration was "devoid of details" and lacked "a plan of action or timeline for responding to the request." *Id.* In stark contrast, the Department of Education provided a sixteen-page declaration spelling out the concrete steps it took to process SBPC's FOIA request prior to this lawsuit.

SBPC asks the Court to disregard Ms. Ezekwe's declaration as impermissible hearsay. Pl.'s Reply at 4. But courts in this District have universally rejected that argument in FOIA cases. *See, e.g.*, *DiBacco v. Dep't of the Army*, 926 F.3d 827, 833 (D.C. Cir. 2019) (noting that although a declaration included information "relayed" to the declarant by her subordinates, "declarations in FOIA cases may include such information without running afoul of Rule 56"); *see also Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009) (finding that a FOIA declarant's statements were not hearsay because they were based on her "familiar[ity] with the facts of th[e] case [and] personal knowledge and experience, [and] review of documents kept in the course of business"), *see also Hainey v. U.S. Dep't of the Interior*, 925 F. Supp. 2d 34, 41 (D.D.C. 2013) (rejecting a hearsay objection to a FOIA declarant as "without merit"); *see also Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 813–14 (2d Cir. 1994) ("An affidavit from an agency employee

responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search.") (citation omitted).

SBPC also argues that the timeline of production is a "salient factor" in the attorney fees analysis. *See* Pl.'s Mot. at 8. True, but it would be "improper" for this Court to simply "infer causation from the timing of disclosure." *Citizens for Resp. and Ethics in Washington v. DOJ*, 83 F. Supp. 3d 297, 303 (2015). "The D.C. Circuit has made clear that, in the FOIA attorneys' fees context, 'the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation.'" *Dorsen*, 15 F. Supp. 3d at 118. Put another way, a FOIA plaintiff must show "more than *post hoc*, *ergo propter hoc*." *Pub. Law Educ. Inst. v. U.S. Dep't of Justice*, 744 F.2d 181, 183 (D.C. Cir. 1984); *see also Am. First Legal Found. v. U.S. Dep't of Energy*, No. 22-cv-1888, 2024 WL 5484078, at *2 (D.D.C. Dec. 23, 2024) (quoting Black's Law Dictionary (12th ed. 2024) (defining "post hoc ergo propter hoc" as the "logical fallacy of assuming that a causal relationship exists when acts or events are merely sequential"). And "unadorned assertion[s]" that its lawsuit "served as a catalyst" because the agency responded after the lawsuit was filed is all SBPC has offered. *Conservation Force*, 160 F. Supp. 3d at 207 (cleaned up). This is "precisely the type of conclusory *post hoc* argument that precedent rejects." *Id.* Courts may not award fees and costs automatically when an agency produces documents only after a lawsuit. And although there was an excessive delay on the agency's part in providing a status update to SBPC prior to this lawsuit, a defendant's "failure to communicate [during the pre-filing period], while regrettable, does not alone overcome its assurances that it intended to process [the request] and experienced delays due to backlog," *First Look Media Works, Inc.*, 2024 WL 4262773, at *4 (cleaned up).

13

Ultimately, the Department of Education's declarant has explained in great detail that the agency acknowledged SBPC's FOIA request and communicated an intent to comply with it, and then worked on the request in earnest for more than a year before this lawsuit, all while juggling thousands of other FOIA requests. The agency's detailed timeline refutes SBPC's claim that its lawsuit caused the production of records. SBPC cannot establish eligibility for attorneys' fees and costs in these circumstances. If it is "'unavoidable delay accompanied by due diligence in the administrative process' that caused the agency's failure to respond in a timely fashion to the initial FOIA request, and not the 'threat of an adverse court order,' then 'it cannot be said that the complainant substantially prevailed in [its] suit.'" *Conservation Force*, 160 F. Supp. 3d at 205 (collecting cases).

### B.    Sudden Acceleration

SBPC also argues that the Department of Education's "'sudden acceleration' to release a substantial quantity of responsive, non-exempt documents after the lawsuit" demonstrated that the lawsuit led to the agency's compliance. Pl's Mot. at 9. "An agency's 'sudden acceleration' in processing a FOIA request may lead to the conclusion that the lawsuit substantially caused the agency's compliance with FOIA." *First Look Media Works, Inc.*, 2024 WL 4262773, at *3; *see also Terris, Pravlik & Millian, LLP v. Ctrs. for Medicare & Medicaid Servs.*, 794 F. Supp. 2d 29, 38 (D.D.C. 2011) ("Sudden acceleration . . . might, in a given case, lead a court to conclude that, despite the government's protestation, the filing of the lawsuit was the real reason for that acceleration."). But that did not occur here.

To prove that a "sudden acceleration" occurred, a FOIA plaintiff has the burden of showing both that (1) "the agency decided against disclosure," and (2) "that the agency did in fact accelerate its response to the FOIA request[.]" *See First Look Media Works, Inc.*, 2024 WL 4262773, at *4.

SBPC falls well short of this showing. In fact, SBPC devotes only a single sentence in its motion arguing that a sudden acceleration occurred in this case. *See* Pl.'s Mot. at 9 ("Furthermore, [the Department of Education's] 'sudden acceleration' to release a substantial quantity of responsive, non-exempt documents after the lawsuit was filed is even more of an inference that the suit substantially caused [its] compliance with the request."). On the other side, the agency's declaration makes crystal clear that the agency was working towards disclosure prior to the lawsuit. *See* Ezekwe Declaration ¶¶ 8–13 (confirming receipt of the request and issuing an initial determination letter). What SBPC describes as a "sudden acceleration" appears to be the result of the agency's work for more than a year prior to the lawsuit to search and review responsive records. *Id.* ¶¶ 14–33 (detailing meetings, emails, and review processes taking place prior to the June 2023 lawsuit). The declaration also explains the reasons any delay, including a significant FOIA backlog at the agency and internal decisions to prioritize other FOIA requests. *Id.* ¶¶ 4, 18, 59; *see also Terris, Pravlik & Millian, LLP*, 794 F. Supp. 2d at 38 (referencing a "backlog . . . that has haunted federal agencies since FOIA was enacted") (citation omitted). And the declaration details the agency's process from June 2023 to July 2024, when it worked with SBPC to revise the FOIA request, produce records, and answer SBPC's questions. *See* Ezekwe Declaration ¶¶ 35–58. There is no basis in this record "to overcome the presumptive 'inference' that [the agency] responded in good faith to the plaintiff's FOIA requests." *Inst. for Energy Rsch. v. Dep't of Treasury*, No. 22-

cv-3653, 2024 WL 5118225, at *5 (D.D.C. Dec. 16, 2024). The Court therefore finds that SBPC has failed to meet its burden under the statute.[2]

***

The Court acknowledges the important work that SBPC does for student loan borrowers across our country, particularly the organization's goal of informing them of their rights. And it does not endorse the Department of Education's excessive delay in providing a status update to SBPC while the agency was processing its request. But "causation . . . requires more than correlation," *Codrea*, 272 F. Supp. 3d at 53, and SBPC has not established causation. It is noteworthy that the statutory provision permitting fees and costs "represents an intentional deviation from the usual rule that each party pays its own attorneys' fees." *Conservation Force*, 160 F. Supp. 3d at 205 (citation omitted). So while Congress agreed that fees "may be awarded with respect to FOIA litigation" to allow requesters to "vindicate their [FOIA] statutory rights," fees are not warranted if, as it turns out, "recourse to the judicial system was unnecessary." *Id.* Based on the record in this case, the Court finds that the agency would have complied with the FOIA request absent this lawsuit. Ultimately, FOIA was enacted to allow the public to "pierce the veil of administrative secrecy," *Dep't of Air Force*, 425 U.S. at 361 (citation omitted), and to "ensure an informed citizenry, vital to the functioning of a democratic society," *NLRB*, 437 U.S. at 242. Here, it appears that it was the statute, and not the Court's minor involvement, that elicited the production of the agency's records.

---

[2] Because SBPC has not substantially prevailed, the Court need not consider whether it should exercise its discretion to award reasonable attorneys' fees and costs. *See Grand Canyon Tr. v. Zinke*, 311 F. Supp. 3d 381,392 (D.D.C. 2018) (noting that when a plaintiff fails to establish eligibility, "entitlement to attorney's fees and the reasonableness of the plaintiff's request need not be considered"). But the Court is dubious of the reasonableness of SBPC's fees and costs given that 69 percent of the $56,962.50 that SPBC requests was made up of "fees-on-fees," i.e., attorneys' fees to litigate this very motion. See Def.'s Opp'n at 5.

**CONCLUSION**

For the foregoing reasons, the Court denies the Plaintiff's Motion for Attorney Fees and Costs, ECF No. 18.

A separate order will issue.

_____

SPARKLE L. SOOKNANAN
United States District Judge

Date:   May 9, 2025